```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Patty L. Shackleford,            :

      Plaintiff,              :

  v.                               :     Case No. 2:10-cv-1052

Commissioner of Social Security,     JUDGE MICHAEL H. WATSON
                                        Magistrate Judge Kemp
      Defendant.              :

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

Plaintiff, Patty L. Shackleford, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for a period of disability and social security disability benefits and for supplemental security income. Those applications were filed on May 11, 2005, and alleged that plaintiff became disabled on January 25, 2005.

After initial administrative denials of her claim, plaintiff was given a hearing before an Administrative Law Judge on March 10, 2008. A supplemental hearing was held on July 11, 2008. In a decision dated September 10, 2008, the ALJ denied benefits. That became the Commissioner's final decision on September 23, 2010, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on February 3, 2011. Plaintiff filed her statement of specific errors on March 3, 2011. The Commissioner filed a response on April 7, 2011. No reply brief has been filed, and the case is now ready to decide.

II. <u>Plaintiff's Testimony at the Administrative Hearing</u>

Plaintiff's testimony at the first administrative hearing is found at pages 370 through 392 of the record. She also testified at the supplemental hearing, and her testimony at that hearing appears at pages 412 through 415. The following is a summary of

the facts to which plaintiff (who was 45 years old at the time of the hearing and has a high school education) testified.

First, plaintiff said that she had actually worked for nine days after the date she claimed she became disabled. She went back to a job at a cabinet factory, but she was unable to perform that job and the employer "escorted [her] off the property and told [her] not to come back." She had not worked thereafter.

She had previously worked for that employer, Mills Pride, from 1999 to 2005. She injured her shoulder trying to clear a jam in a cutting machine. Before that job, she had done food preparation in a restaurant and worked in an aluminum factory.

Plaintiff has had carpal tunnel surgery on both wrists. She has difficulty using her hands. She also has arthritis in her back from an old fracture at T11, and pain in her left shoulder from the industrial accident. Additionally, the cartilage in her right knee is disappearing, and she has problems with both feet. She has also been treated for depression.

From a physical standpoint, plaintiff can lift about ten pounds and walk less than a block. She has difficulty climbing stairs. She drives very occasionally and does her own laundry and cooking. She has dropped things around the house, including her grandchildren. By the time of the supplemental hearing, her walking had gotten worse and she was having tingling and numbness in her hands and arms.

### III. The Medical Records

The medical records in this case are found beginning on page 127 of the administrative record. They can be summarized as follows. This summary will focus on educational records and records relating to plaintiff's claimed psychological impairments, because her sole assignment of error deals with that issue.

Plaintiff never underwent a long-term course of treatment by

a mental health specialist. However, she was treated for anxiety by her family doctor, Dr. Frazier, from at least April 24, 2003. (Tr. 160). He prescribed Wellbutrin for her at that time. Later notes from his office reflect a diagnosis of depression. She was seen in the emergency room in 2007 after a domestic altercation and it was noted that she had a prior diagnosis of an affective disorder. (Tr. 278). She was discharged from that visit as emotionally stable and no medications were prescribed. (Tr. 280).

Because of these indications of some psychological impairment, the ALJ noted, at the conclusion of the first administrative hearing, that the record was not complete enough for him to make a decision, and he ordered a "psychological consult." (Tr. 402). Plaintiff was then referred to Dr. Tanley, a psychologist, for an evaluation.

The evaluation took place on April 11, 2008. Dr. Tanley's assistant administered two tests, the Wechsler Adult Intelligence Scale-III and the WRAT-4. Plaintiff said she had never seen a psychologist before. She was generally cooperative but did not put forth a full effort on testing and complained about the process. Most of her cognitive functions appeared to be below average. The results of the testing were not considered to be valid because of her lack of effort, although the scores indicated mild mental retardation (a verbal IQ of 62, a performance IQ of 81, and a full-scale IQ of 68). The same lack of validity was noted on the WRAT-4. Dr. Tanley deferred a diagnosis with respect to the matters tested and recommended that school records be obtained. Plaintiff's GAF was rated at 80. Dr. Tanley thought plaintiff was moderately impaired "for today" in her ability to relate to others and he found no impairment in her ability to deal with stress. He could not evaluate her ability to understand and follow simple instructions or perform

simple, repetitive tasks.  (Tr. 326-29).

Some school records were obtained after this evaluation. They appear at pages 125-26 of the administrative record.  They are not particularly illuminating, and show she was ranked 322d out of 366 students and received Cs and Ds in most of her classes, with one B and one F recorded.

### IV.  The Medical Expert's Testimony

A medical expert, Dr. Kendrick, also provided testimony during the administrative proceedings (Tr. 390-95).  He noted that plaintiff had bilateral carpal tunnel releases in 2002 and suffers from neuropathy on the right side.  She also had tedonpopathy of the left shoulder with surgery in 2007.  She had some degenerative disc disease at L2-3 and had surgery for plantar fasciitis.  Dr. Kendrick believed that with these impairments, plaintiff could do light work with some restrictions on climbing or using foot controls and reaching overhead with her left hand.

### V.  The Vocational Testimony

Dr. Olsheski, a vocational expert, testified at the first administrative hearing.  He characterized plaintiff's past work as medium and either unskilled or semi-skilled, except for the food preparation position, which was light and unskilled.  He was asked to assume that plaintiff had the limitations described by Dr. Kendrick.  With those limitations, she could not do her past work except for the food preparation job.  That job would be eliminated if plaintiff could perform fingering frequently but not constantly.  However, even with that restriction, she could do other light unskilled jobs.  If she could handle and finger only occasionally, however, there would be no jobs that she could perform.  (Tr. 396-402).

At the supplemental administrative hearing, a different vocational expert, Mr. Walker, was called to testify.  He was

asked to take into account some psychological limitations concerning interaction with others and the performance of only simple work.  With those limitations and the prior physical limitations identified by Dr. Kendrick, Mr. Walker believed plaintiff could still do such jobs as cafeteria attendant, stock clerk and order filler, or mail clerk.  He also testified to the numbers of such jobs in the economy.  (Tr. 415-23).

                    VI.   <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 12 through 27 of the administrative record.  The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured status requirements of the Social Security Act up to December 31, 2010.  The ALJ next found that plaintiff had not engaged in substantial gainful activity from her alleged onset date forward, and that the time she worked after that date was an "unsuccessful work attempt."

As far as her impairments are concerned, the ALJ found that plaintiff had severe impairments including carpal tunnel syndrome, bilaterally, status post three surgeries; degenerative joint disease of the left shoulder, status post decompressive surgery; degenerative disc disease of the cervical, thoracic, and lumbar spine; plantar fasciitis; degenerative joint disease of the right knee; obesity; depressive disorder; and borderline intellectual functioning.  He also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

As far as plaintiff's limitations were concerned, the ALJ found that plaintiff had the residual functional capacity to perform a full range of light work except that she could walk or stand for only an hour at a time, could only occasionally use

foot controls, climb stairs, or reach overhead with her left arm, that she could not work around unprotected heights or hazardous machinery, and could do only simple work in an environment where she had only occasional interactions with co-workers, supervisors, or the general public.  With these limitations, although plaintiff could not do her past relevant work, she could do those jobs which Mr. Walker identified.  The ALJ further found that these jobs existed in substantial numbers in the regional economy.  As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VII. Plaintiff's Statement of Specific Errors

In her statement of specific errors, plaintiff raises only a single issue.  She contends that the ALJ erred by relying on the report from Dr. Tanley concerning her psychological symptoms, and that additional testing should have been ordered.  To the extent that this issue questions the factual basis for the ALJ's decision, the Court reviews that decision under this legal standard:

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    Shortly after plaintiff saw Dr. Tanley, her attorney wrote to the ALJ and argued that the testing process was invalid. He asserted that plaintiff was evaluated at the same time as two other individuals, spoke to Dr. Tanley for only six minutes, and felt that she was not treated professionally or respectfully during the test process. He asked for both a supplemental hearing and additional testing. (Tr. 37). Dr. Tanley responded to these claims by noting that he spent 31 minutes with plaintiff, that he explained the reason for the tests being administered, and that his assistant accurately reported plaintiff's oppositional behavior during testing. He also noted that the test results, despite their invalidity, were inconsistent with a diagnosis of mental retardation and that there was nothing else in the examination suggesting that plaintiff functioned in that range. (Tr. 336-37).

    In her statement of errors, plaintiff argues that without valid testing, the ALJ was not in a position to assess whether plaintiff had any psychological impairments, and particularly whether she suffers from mild mental retardation. Plaintiff cites to Stewart v. Heckler, 730 F.2d 1065 (6th Cir. 1984) for the proposition that "the report of a consulting physician, not containing any opinion regarding a claimant's functional

abilities, did not support a decision denying disability benefits." Plaintiff's Statement of Errors, Doc. #11, at 18.

It is somewhat difficult to see the relevance of the Stewart case. There, the court disregarded the opinion of a Dr. Thurman (whose opinion is not summarized in the brief opinion issued by the Court of Appeals) because his medical group had been submitting fraudulent reports in social security cases. It then remanded the case for an award of benefits because the claimant's treating doctor had found him disabled and there was no contrary evidence in the record.

Apart from the Stewart decision, plaintiff has cited no other case law supporting her argument that a remand is needed in this case because Dr. Tanley was unable to use the test results to evaluate her functional level. As the Commissioner's memorandum in opposition points out, there was other evidence in the record from which the ALJ concluded that plaintiff did not have any significant level of dysfunction due to psychological conditions and that she functioned at least in the range of borderline intelligence. She had a significant work history, including semi-skilled work, she cared for herself and her grandchildren, she graduated from high school, and there is no evidence that she was in special education classes. There is no evidence of any deficits in adaptive functioning prior to age 22, which evidence would have to be present in order for plaintiff to prove she suffered from mental retardation. See Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). Even without any real evidence of psychological limitations, the ALJ imposed some restrictions on plaintiff's ability to deal with others and to perform work other than simple, one- and two-step tasks. The record amply supports the conclusion that she was no more limited than that.

In this case, it is likely that the ALJ would have acted

within the scope of his discretion not to obtain a consultative psychological examination at all.  If "the record [is] sufficiently fully developed to enable the ALJ to make a determination," such an examination need not be ordered.  <u>Peebles v. Chater</u>, 85 F.3d 629, *5 (6th Cir. May 6, 1996) (unreported), <u>citing Landsaw v. Secretary of Health & Human Servs.</u>, 803 F.2d 211, 214 (6th Cir. 1986).  Here, the ALJ could easily have found that the scant evidence of a psychological disorder of any kind (and plaintiff did not assert disability on that basis) was enough to allow him to dispense with a consultative examination. That being so, the fact that the examination did not produce complete results - largely due to the plaintiff's own lack of effort - did not change the fact that the record, including the two reports from Dr. Tanley, was sufficient for the ALJ to determine that if plaintiff had a cognitive disorder, it was no more than borderline intellectual functioning, and that it did not prevent plaintiff from being able to perform simple tasks - tasks much simpler than the ones she had been able to do when she was working.  Thus, there was no basis for the ALJ to apply Section 12.05(C) of the Listing of Impairments, which is what would usually happen if a claimant is found to be even mildly mentally retarded, nor any basis for more severe limitations than those incorporated into the ALJ's residual functional capacity finding.  Consequently, there is no error here and no basis for a remand.

### VIII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that the Clerk be directed to enter judgment in favor of the defendant Commissioner of Social Security.

### IX.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation,

that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge